# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VIETNAM VETERANS OF AMERICA,  )
 *et al.,*  )
        )
     Plaintiffs,  )
        )
     v.  )  Civ. No. 1:06-CV-01038(JR)
        )
R. James NICHOLSON, *et al.*,  )
        )
     Defendants.  )
        )

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs hereby move the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1 for summary judgment on the issue of Defendants' violations of 5 U.S.C. §§ 552a(e)(10) and 552a(g)(1)(D).[1]  A Statement of Material Facts as to Which There is No Genuine Issue is attached.  The grounds for Plaintiffs' motion are set forth in the attached Memorandum of Points and Authorities.

A proposed order is attached hereto for the Court's consideration.

Wherefore, Plaintiffs respectfully request that the instant motion be GRANTED.

Respectfully submitted,

_____/s/_____
L. Gray Geddie (D.C. Bar No. 421357)
Douglas J. Rosinski (D.C. Bar No. 461275)
Ogletree, Deakins, Nash,
 Smoak & Stewart, P.C.
1320 Main St.
Columbia, SC 29201-3266
Attorneys for Plaintiffs

Dated: January 9, 2007

---

[1]  This motion is in addition to Plaintiffs' forthcoming opposition to "Defendants' Motion to Dismiss or, in the Alternative, For Summary Judgment," which Plaintiffs will file no later than January 31, 2007.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VIETNAM VETERANS OF AMERICA, *et al.,* | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )       Civ. No. 1:06-CV-01038(JR) ) |
| R. James NICHOLSON, *et al.*, | ) ) |
| Defendants. | ) ) ) |

**STATEMENT OF MATERIAL FACTS AS
TO WHICH THERE IS NO GENUINE ISSUE**

1.     The Department of Veterans Affairs ("VA") is a federal agency as defined in the Privacy Act of 1974, as amended (the "Privacy Act"), 5 U.S.C. § 552a.

2.     On May 3, 2006, the VA "Veterans and Beneficiaries Identification and Records Location Subsystem-VA" ("BIRLS"), the VA "Compensation, Pension, Education and Rehabilitation Records – VA, System No. 58VA21/22" ("C&P file"), the 2001 National Survey of Veterans ("NSV"), the Veterans Health Administration ("VHA") National Enrollment Data file, and a Department of Defense file of over 6,700 individuals who had been exposed to mustard gas and other substances were each a "system of records" containing numerous individual "records" as defined by the Act.

3.     On Wednesday, May 3, 2006, the records of approximately 26 million veterans and United States military personnel were stolen from the home of a VA employee ("John Doe").  *Review of Issues Related to the Loss of VA Information Involving the Identity of Millions of Veterans* (July 11, 2006) ("VA OIG Rep't") (attached as Ex. A) at i, 1.

4.     The records stolen from John Doe's home included large record extracts from BIRLS and the C&P file, the NSV, a file extracted from both the VHA National Enrollment Data file and the C&P file, and a file of records for over 6,700 individuals who had been exposed to mustard gas and other substances ("stolen records").  VA OIG Rep't at 3, 7-8.

5.     John Doe did not use any sort of encryption or any type of password protection in storing the stolen records and failed to physically safeguard the stolen records.  VA OIG Rep't at 7.

6.     Defendants were aware of inherent risks associated with the removal of data from a protected environment that can result in potential disclosure of Privacy Act records through loss or theft.  VA OIG Rep't at 32.

7.     On May 3, 2006, VA regulations, including 38 C.F.R. § 1.576, required that VA safeguard individuals against an invasion of personal privacy and that VA establish and maintain adequate safeguards to prevent misuse of such information.  VA OIG Rep't at 6.

8.     On May 3, 2006, inherent risks associated with the removal of data from a protected environment that could result in potential disclosure of Privacy Act records through loss or theft were not addressed in VA policies and procedures.  VA OIG Rep't at 32.

9.     On May 3, 2006, VA did not have any policy, process or procedure that specified how personal information in Privacy Act records under VA's control was to be safeguarded when personal information, such as the stolen records, was removed from the workplace.  VA OIG Rep't at 6-7.

10.     On May 3, 2006, VA did not have any means to identify or prevent the removal of the stolen records from the VA workplace and the VA policies and the administrative

controls then existing were not adequate to prevent the theft of the stolen records.  VA OIG Rep't at 27, 29.

11.    A link on the VA intranet provided VA employees the questions and answers to questions asked during employee information security training and allowed employees to print a "Certificate of Training" without accessing the training module or attending live training.  VA OIG Rep't at 32-33.

12.    On May 3, 2006, the VA employee security training modules specifically identified the loss of personal computer equipment or storage media containing personal information such as Privacy Act records as potentially resulting in the use of the information for "theft and fraud."  VA OIG Rep't at 11.

13.    On May 3, 2006, VA employee security training plans stated that private and uncontrolled media may present a security risk if left unprotected.  Defs.' Mem. at 11.

14.    On May 3, 2006, VA did not have any policy or procedure to protect Privacy Act records removed from the VA worksite, required employees to obtain authorization before removing such records from a VA worksite, prohibited the use of non-VA computers to process or store Privacy Act records, or that required safeguards such as password protection or encryption when Privacy Act records were stored on portable storage media or non-VA computers.  VA OIG Rep't at 29, 30, 31.

15.    Although on May 3, 2006, VA Handbook 6300.4, "Procedures for Processing Requests for Records Subject to the Privacy Act," issued January 12, 1998, required VA to implement procedures to ensure data, including Privacy Act records, were not removed from the VA worksite without proper authorization and documentation, no such procedures existed.  VA OIG Rep't at 30.

16.    On May 3, 2006, there was a "gap" between Privacy Act legal requirements and VA policies and processes designed to ensure compliance with this law and VA policies

did not provide safeguards for protecting Privacy Act information from loss or theft when the information resided outside a VA automated system.  VA OIG Rep't at 31-32.

17.    VA Directive 0710 requires background screenings commensurate with the risk involved for any positions that require access to VA information systems, including Privacy Act systems of records, but John Doe, the VA employee who took home the records of approximately 26 million individuals, had never been vetted through the VA's background investigation process for suitability to access to those records, although he had worked at VA for decades.  VA OIG Rep't at 34.

18.    VA does not maintain any list of the status of background checks conducted for employees in the office in which John Doe worked and the manager delegated the authority to determine position sensitivity levels has never re-evaluated the risk factors or the sensitivity level designation of any data analyst.  Mem. of Interview, Management Analyst, VA Office of Policy, Planning, and Preparedness (June 20, 2006) (attached as Ex. B).

19.    Investigation following the May 3, 2006, data theft revealed that a number of other employees assigned to John Doe's office, some of whom had similar data access privileges, also had no suitability determinations.  VA OIG Rep't at 35.

20.    In FY 2005, OIG had identified to Defendants instances where background investigations and reinvestigations were not initiated in a timely manner or were not initiated at all.  VA OIG Rep't at 46.

21.    The Secretary is ultimately responsible for ensuring that VA Privacy Act records are safeguarded in compliance with applicable statutory and regulatory requirements. VA OIG Rep't at 41.

22.    The Secretary did not correct the deficiencies in Privacy Act safeguards identified by the OIG in 2005.

Respectfully submitted,

_____/s/_____
L. Gray Geddie (D.C. Bar No. 421357)
Douglas J. Rosinski (D.C. Bar No. 461275)
Ogletree, Deakins, Nash,
  Smoak & Stewart, P.C.
1320 Main St.
Columbia, SC 29201-3266
Attorneys for Plaintiffs

Dated: January 9, 2007

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| VIETNAM VETERANS OF AMERICA, *et al.,* | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:06-CV-01038(JR) |
| | ) | |
| R. James NICHOLSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants have conceded all the material facts required to establish their liability for violations of the Privacy Act of 1974, as amended ("Privacy Act"). The Privacy Act, implementing statutes at 5 U.S.C. § 552a, and Department of Veterans' Affairs ("VA") regulations, policies, procedures, and processes establish Defendants' clear duties and responsibilities to insure the security of, and to protect against any anticipated threats or hazards to, personal information under their control, which could result in substantial harm, embarrassment, or inconvenience to any individual on whom VA maintained such information. Contrary to these explicit requirements, Defendants' regulations, policies and procedures either did not exist, or were not complied with, and, in any event, ultimately failed to prevent a single employee from not only hazarding, but actually losing control of, approximately 26 million Privacy Act records. This ignorance of, or contempt for, the Privacy Act safeguards requirements establishes Defendants' liability to Plaintiffs, as a matter of law, for the largest theft of personal information containing Social Security numbers in the country's history.

Indeed, notwithstanding the myriad of other legal and factual issues in dispute, there is no genuine issue of fact regarding Defendants' liability for violation of 5 U.S.C.

§ 552a(e)(10), as Defendants have publicly admitted the safeguards violations and the massive potential harm arising therefrom. The Court, therefore, should not hesitate to grant Plaintiffs summary judgment on this issue. The remaining issues of whether Defendants' violations were intentional or willful and Plaintiffs' damages can then be resolved.

**RELEVANT FACTUAL BACKGROUND**

On Wednesday, May 3, 2006, a burglar or burglars stole a laptop computer and an external hard drive from the Maryland home of a Department of Veterans Affairs ("VA") employee ("John Doe").[1] *Review of Issues Related to the Loss of VA Information Involving the Identity of Millions of Veterans* (July 11, 2006) ("VA OIG Rep't") (attached as Exhibit A) at i-ii; "Defendants' Memorandum in Support of Defendants' Motion to Dismiss or, in the Alternative, For Summary Judgment" (Nov. 20, 2006) ("Defs.' Mem.") at 1. The laptop and hard drive were Mr. Doe's personal property. VA OIG Rep't at i; Defs.' Mem. at 1-2. The stolen hard drive contained files of Privacy Act records downloaded from VA computers with "personal information pertaining to millions of veterans." VA OIG Rep. at ii; Defs.' Mem. at 2. The VA employee had removed the downloaded Privacy Act records to his home over a period of years without detection by any VA security apparatus. VA OIG Rep't at i-ii; 3, 6-7; Defs.' Mem. at 2, 12-13. The Privacy Act records stored at the VA employee's home were not encrypted in any way and were not stored in a security container. VA OIG Rep't at 7; Defs.' Mem. at 2.

The VA Office of Inspector General ("OIG")'s investigation into the circumstances of the May 3, 2006, theft explicitly and unequivocally found that Defendants' policies, practices and procedures failed to address, much less provide

---

[1] To protect the privacy of this individual, Plaintiffs do not identify the employee by name, although the identity is known to us.

adequate safeguards for, personal information contained in Privacy Act records downloaded from VA computer systems and removed from the VA worksite. *See* OIG Rep't at 27-42. VA policies did not provide any safeguards for protecting Privacy Act records from loss or theft when the information resided outside a VA automated system, although this specific vulnerability was used by Defendants as an example of potential risk in the employee information security training. The OIG specifically found that there was a "gap" between Privacy Act legal requirements and VA policies and processes designed to ensure compliance with the Act. *Id.* at 31-32.

Moreover, this "gap" existed despite Defendants' knowledge of the "inherent risks associated with the removal of the data from a protected environment that can result in potential disclosure" of Privacy Act records "through loss or theft." VA OIG Rep't at 32. These "inherent risks" were simply not "addressed in VA policies and procedures" on May 3, 2006. *Id.* Nowhere in the detailed report did OIG imply, much less assert, that "removal of data" from a VA worksite was "unforeseeable" or a "novel" event that was somehow beyond the scope of VA's duty of safeguarding veterans' personal information. Indeed, such an assertion would be ridiculous because at the time of the data theft approximately 40,000 VA employees had remote access to VA Privacy Act records from their private computers. Tr. of Sworn Testimony of Pedro Cadenas, Jr., Associate Deputy Assistant Secretary for Cyber and Information Security and Acting Deputy Chief Information Officer[2] (June 6, 2006) (attached as Ex. C) at 37. Each of these employees could, indeed had to, download Privacy Act records and other sensitive information to their personal computers to perform work from those computers. The absolutely foreseeable result is the same as with John Doe: Privacy Act records stored willy-nilly on private computers outside the VA. Yet, Defendants failed to deploy any

---

[2] Mr. Cadenas has since resigned.

safeguards against this huge – and fundamental – threat to the security of the Privacy Act records under their control.

To the contrary, the VA OIG found that the agency had violated its own regulations at 38 C.F.R. § 1.576 by failing to implement <u>any</u> policy, process or procedure to safeguard personal information, including Privacy Act records, removed from a VA workplace. VA OIG Rep't at 6-7. Specifically, VA did not have any policy that prohibited employees from removing Privacy Act records from the VA worksite, required employees to obtain authorization before removing the records, prohibited the use of non-VA computers to process or store Privacy Act records, or required safeguards such as password protection or encryption when Privacy Act records were stored on portable storage media or non-VA computers. *Id.* at 29, 30, 31. In addition, VA failed to enforce the few policies it did have by permitting a VA employee to repeatedly download and remove the personal records of essentially every living veteran and active duty service member without raising suspicion because there were no procedures to implement even the most basic safeguards against improper and unauthorized file copying.[3] *Id.* at 30. Further, VA completely ignored the requirements of VA Directive 0710 by permitting the same VA employee unfettered and unmonitored access to Privacy Act records without a background check.[4] *Id.* at 34.

In sum, Defendants failed to raise any security barriers or employ any safeguards to detect, much less prevent, even the most basic threat to the security or integrity of the over 26 million stolen records – an employee simply walking out the front door with them in his pocket. It is beyond reasonable dispute that in May 2006 any legitimate

---

[3] Defendants' failure to at least ask Mr. Doe the reason for his downloading the Privacy Act records is especially egregious as the VA data center logged Mr. Doe's system entries. Tr. of Sworn Testimony of Unidentified VA Information Security Specialist (June 7, 2006) (attached as Ex. D) at 9.

[4] For the purposes of this motion, it is not necessary to resolve the curiosity of how an individual can be "authorized" without satisfying all the requirements to obtain that authorization, as the failure to perform the required background check is sufficient to find a violation.

attempt to protect Privacy Act records should have addressed at least the possibility of

such an occurrence.  Thus, the only legal basis for Defendants not erecting <u>any</u>

safeguards against such a possibility would be an analysis that such an event either could

not occur or, if it occurred, <u>could</u> <u>not</u> have resulted in substantial harm, embarrassment,

inconvenience, or unfairness to the individuals.  There was – and remains – no factual

basis for such a conclusion.  Defendants, therefore, as a matter of law, violated the

Privacy Act.

### STATUTORY REQUIREMENTS FOR SAFEGUARDING RECORDS

The Privacy Act gives federal "agencies <u>detailed</u> instructions for managing their

records."  *Doe v. Chao*, 540 U.S. 614, 618 (2004) (emphasis added).  The act defines a

"record" as "any item, collection, or grouping of information about an individual that is

maintained by an agency, including, but not limited to . . . his name, or the identifying

number, symbol, or other identifying particular assigned to the individual."  5 U.S.C.

§ 552a(a)(4).  The act further defines "a system of records" as "a group of any records

under the control of any agency from which information is retrieved by the name of the

individual or by some identifying number, symbol, or other identifying particular

assigned to the individual."  *Id.* § 552a(a)(5).  Congress also provided "various sorts of

civil relief to individuals aggrieved by failures on the Government's part to comply with

the requirements."  *Chao*, 540 U.S. at 618.

Among the many "detailed instructions" in the Privacy Act are a collection of

specific "Agency Requirements" described in 5 U.S.C. § 552a(e).  In particular, the

Privacy Act requires each federal agency that maintains a system of records to:

> [E]stablish <u>appropriate</u> administrative, technical, and physical <u>safeguards</u>
> to insure the security and confidentiality of records and to protect against
> any <u>anticipated</u> threats or hazards to their security or integrity which <u>could</u>
> result in substantial harm, embarrassment, inconvenience, or unfairness to
> any individual on whom information is maintained.

5 U.S.C. § 552a(e)(10) (emphasis added). A plain reading of this language finds <u>no</u> requirement for <u>actual</u> harm, <u>actual</u> damages, or <u>actual</u> disclosure of a Privacy Act record for a violation. A failure to safeguard records from threats that <u>could</u> result in substantial harm, embarrassment, or inconvenience to the adversely affected individual is all that is required. Further, there are no caveats, prerequisites, or exceptions to this clear and straightforward statutory requirement.

The "various sorts of civil relief" authorized by the Privacy Act are specified in 5 U.S.C. § 552a(g)(1) "Civil Remedies." This section specifically addresses incorrect determinations under section 552a(d)(3), 5 U.S.C. § 552a(g)(1)(A), refusals to comply with an individual request under section 552a(d)(1), *id.* § 552a(g)(1)(B), and failures to properly maintain a record which results in an adverse determination. *Id.* § 552a(g)(1)(C). The final civil remedy provision states that "[w]henever any agency . . . fails to comply with <u>any</u> other <u>provision</u> of this section, or <u>any</u> <u>rule</u> promulgated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency." *Id.* § 552a(g)(1)(D) (emphasis added). Defendants' violations of 5 U.S.C. § 552a(e)(10) are, therefore, subject to civil remedy.

## I.    DEFENDANTS VIOLATED THE PRIVACY ACT SAFEGUARDS REQUIREMENTS

### A.    The Legal Requirements Are Clear

Defendants failed to safeguard Plaintiffs' personal information as required by the Privacy Act in at least three specific ways: (1) the undetected downloading of Privacy Act records to John Doe's personal storage media; (2) removal of this massive amount of supposedly safeguarded information from the VA work space over a period of several years without challenge; and, (3) the actual theft of the unprotected records. Each of these three events (or series of events) violated the safeguards requirements of 5 U.S.C. § 552a(e)(10). The final event, the actual theft of millions of Privacy Act records,

stripped away whatever veneer of credibility Defendants' safeguards retained at the time.

Further, each of these types of occurrences were not only foreseen, but used in VA

employee information security training as examples of unacceptable risk.  Defendants

cannot now simply claim that these same threats and risks were not reasonably

foreseeable, *see, e.g.,* Defs.' Mem. at 66-68 ("people often fail to foresee disasters of a

kind that have not yet occurred"), because they <u>did</u> foresee them, they just decided to

ignore their Privacy Act responsibilities to address the risks.

Defendants' reticence to perform their duties notwithstanding, safeguarding the

private information of individuals from agency misfeasance and malfeasance was one of

the major thrusts of the Privacy Act.  As stated in the Act itself, the purpose was "to

provide certain safeguards for an individual against an invasion of personal privacy by

requiring Federal agencies" to insure, *inter alia*, "that adequate safeguards are provided

to prevent misuse of such information."  Pub. L. 93-579, § 2(b).  Further, the Senate

Committee on Government Operations identified that one of the "Five Major Ways" of

accomplishing the Act's purposes was by

> [e]stablish[ing] certain minimum standards for handling and processing
> personal information maintained in the data banks and systems of the
> executive branch, for <u>preserving</u> the <u>security</u> of the computerized or
> manual system, and for <u>safeguarding</u> the confidentiality of the
> information.

S. Rep. No. 93-1183 at 2 (emphasis added).  To accomplish "this end," the Privacy Act

requires every agency to:

> [i]ssue appropriate administrative orders, provide personnel sanctions, and
> establish appropriate technical and physical safeguards to <u>insure</u> the
> <u>security of the information system</u> and the confidentiality of the data.

*Id.* at 2-3 (emphasis added).  The Committee Report language makes it very clear that the

security of an agency's information systems was viewed as a critical part of the overall

safeguarding of an individual's information.

To remove any doubt regarding the key role played by safeguards and security of the information system in the overall legislative scheme to protect information privacy, the Committee explicitly directed affirmative and diverse security actions.

> This means, furthermore, that certain computer <u>hardware</u> and <u>software</u> used to operate the information systems of government should provide <u>features</u> which will promote the necessary <u>security</u> of any part of the system and the confidentiality of the information processed and handled by means of it.

*Id.* at 16 (emphasis added). Congress, therefore, not only directed "safeguarding" and "security" of personal information in government in agency computer systems, it explicitly identified that, as a minimum, hardware and software "features" were to be used by the agencies to ensure adequate protection of Privacy Act records.

**B.      Defendants Admit Facts Establishing Violation of the Privacy Act Safeguards Requirements**

The dispositive facts of Defendants' failure to comply with the Privacy Act's requirements to safeguard and protect personal information entrusted to VA are clear, undisputed, and indeed indisputable. One need look no farther than the agency's own OIG report to determine that Defendants violated 5 U.S.C. § 552a(e)(10) with regard to the Privacy Act records stolen from the VA employee's home. Indeed, the facts as established by the VA OIG identify multiple violations of the Privacy Act safeguards requirements by Defendants.[5]

*1.      Defendants admit that they failed to establish appropriate administrative, technical, and physical safeguards*

Contrary to the requirements of the Privacy Act, on May 3, 2006, Defendants did not have any safeguards against VA employees downloading Privacy Act records onto

---

[5]   As harsh as it is, the VA OIG Report omitted many facts relevant to Defendants' Privacy Act violations which are contained in sworn testimony of agency employees and officials and the numerous internal agency documents obtained in preparation of the report. Even the OIG's sanitized version of the facts, however, admit to violations sufficient to establish liability pursuant to 5 U.S.C. § 552a(e)(10).

personal storage media and removing the records from the VA workspace. "Each agency that maintains a system of records <u>shall</u> . . . establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records." 5 U.S.C. § 552a(e)(10) (emphasis added). Contrary to this explicit requirement, the OIG found no policies or procedures existed to prevent the VA employee from taking the records of essentially every living veteran home. The "VA's policies and procedures for safeguarding information and data" were "not adequate in preventing the loss of the [stolen] data." OIG Rep't at 27. Further, there "was no consolidated repository of instructions and requirements that employees could research and follow." *Id.* The OIG "review confirmed that there was no consolidated and current set of policies and procedures that employees and contractors could access to ensure all applicable requirements [were] being met." *Id.* at 28. To dispel any doubt regarding the lack of administrative safeguards, the OIG concluded that:

> VA did not have sufficient policies and procedures in place to prevent this recent data loss incident, <u>or any other such incident</u>, that would have involved the disclosure of protected information. We did not identify <u>any</u> VA policy that prohibited employees or contractors from removing protected information from the VA worksite, required employees or contract employees to obtain authorization before removing the information, prohibited the use of non-VA computers to process or store protected information, or that required safeguards such as password protection or encryption when protected information was stored on portable storage media on non-VA computers.

VA OIG Rep't at 29 (emphasis added).

This passage is chilling, not only because the agency's own Inspector General unequivocally concluded that Defendants failed to implement any administrative safeguards (and thus, violated 5 U.S.C. § 552a(e)(10)), but because it raises the specter that similar incidents could have gone, and continue to go, undetected. The OIG report, therefore, also highlights precisely why Congress placed so much emphasis in the

Privacy Act on safeguards:  a failure to properly safeguard records could (as it did here) enable <u>millions</u> of <u>undetected</u> disclosures.[6]

Further, the policies and procedures identified by VA as containing the required safeguards did not do so.  For example, Defendants identified VA Directive 6502, "Privacy Program," to the OIG as relevant to safeguarding the stolen Privacy Act records. VA OIG Rep't at 29.  According to the OIG, this document stated that "VA will ensure that all privacy-protected data maintained by or for, [sic] VA in any medium, is kept confidential, except when disclosure is permitted by law."  *Id.*  Yet, the "Directive does not specify how the information will be protected."  *Id.*  The OIG also found that "[n]one of the employees we interviewed was able to identify a policy or other requirement in place prior to May 3, 2006, that established specific requirements for safeguarding protected information when removed from the worksite."  *Id*. (emphasis added).  Thus, whether or not Defendants developed safeguards, VA employees could not possibly implement requirements of which they were completely unaware.

VA also offered OIG a document entitled "Security Guidelines for Single User Remote Access" dated March 10, 2006, that purportedly had some relevance to the May 3, 2006, records theft.  VA OIG Rep't at 29.  OIG, however, found several deficiencies which rendered this document defective as an administrative safeguard in this matter: (1) the document "was not an approved or published VA Directive, Handbook or policy;" (2) the document's "provisions did not provide adequate safeguards for information stored on portable media" in any case; and (3) the guidelines "were only applicable to employees with remote access to the VA intranet."  *Id.*  Thus, these "security guidelines" did not address the removal of records from a VA worksite to an employee's home.

---

[6]  In contrast, a failure to correct an error in an individual's record, 5 U.S.C. § 552a(e)(6), only affects that single individual.  Defendants' safeguards violations affected over 26 million individuals.

VA Handbook 6300.4, "Procedures for Processing Requests for Records Subject to the Privacy Act" was equally deficient and ineffective in implementing administrative safeguards. First, the Handbook was issued on January 12, 1998, more than 8 years before the May 3, 2006, records theft, and had never been updated. VA OIG Rep't at 30. Second, the document refers only to "the protection of records on 'floppy disks'" not any other medium. *Id.* Next, the requirements applied only to actual requests for Privacy Act records submitted to VA. Thus, "[n]ot only is the Handbook outdated with respect to the current technology used to store information, employees would not be familiar with the cited provision unless they were processing a request for Privacy Act records." *Id.* As the OIG summed it up, this procedure simply "does not prohibit removing protected data from the worksite." *Id.*

Finally, on May 3, 2006, VA did not even have a requirement mandating the fundamental safeguards of password or encryption protection for Privacy Act records. OIG "could <u>not</u> identify <u>any</u> VA policy in effect at the time of the incident that required [Privacy Act records] stored on portable media be password protected or encrypted, or that media devices or hard copy of records be secured by any specific means." VA OIG Rep't at 30 (emphasis added). Thus, no safeguard of any type existed on May 3, 2006, contrary to the Privacy Act and 5 U.S.C. § 552a(e)(10).

Nor did VA "training" fill the "gap" left by Defendants' lack of safeguards. Indeed, the OIG found that VA's "cyber security and privacy awareness" training modules did "not adequately address safeguarding protected information when it is removed from VA premises." VA OIG Rep't at 32-33. Further, the entire training process is suspect as "a link on the VA intranet provides the questions and answers to questions asked during the training and allows employees to print a 'Certificate of

Training' <u>without accessing the training module</u>."[7]  *Id.* at 33 (emphasis added).

Defendants' assertions that VA training was an effective administrative safeguard, *see,*

*e.g.*, Defs.' Mem. at 9-11, therefore, are unfounded, if not disingenuous puffery.

    Defendants' violation of Privacy Act requirements for technical and physical

safeguards is, if possible, even more blatant.  Neither Defendants nor OIG identified any

evidence of <u>any</u> technical or physical safeguards of any sort, at any time, for any VA

Privacy Act records.  This is despite Congress' specific description of government

information system "computer <u>hardware</u> and <u>software</u>" design to "provide features which

will promote the <u>necessary</u> security of" Privacy Act records.  S. Rep. No. 93-1183 at 16

(emphasis added).  Defendants did not implement either type of safeguard despite over <u>30</u>

<u>years</u> to do so.

    Defendants' numerous failures to implement any administrative, technical, or

physical safeguards are, therefore, plain violations of the Privacy Act.

2.    *Defendants admit that they failed to require compliance*
      *with the processes that were established*

    Contrary to the requirements of the Privacy Act, on May 3, 2006, Defendants did

not require VA employees to comply with agency policies or procedures, to the extent

that they were relevant, existing on May 3, 2006.  "Whenever any agency . . .  fails to

comply with any other provision of this [5 U.S.C. § 552a] or <u>any rule promulgated</u>

<u>thereunder</u>, in such a way as to have an adverse effect on an individual, the individual

may bring a civil action against the agency."  *Id.* § 552a(g)(1)(D) (emphasis added).

Defendants, therefore, separately violated the Privacy Act safeguards requirements by

failing to comply with their own policies, procedures and guidelines.

---

[7]  It is unclear whether Defendants were aware that such a "workaround" was available, although it was hosted on their own internal agency network.  At best, this is yet another example of Defendants' failure to implement any security for the information under their control, and only slightly less damning than a revelation that VA officials <u>were</u> aware of the compromised "safeguard" but allowed it to continue.

For example, VA Handbook 6300.4, Section 9, requires that the agency implement procedures to ensure Privacy Act records "are not removed or used outside Government buildings or installations without proper authorization and documentation." VA OIG Rep't at 30. Yet, OIG could not identify any such procedures, *id.*, and Plaintiffs are not aware of any. Further, OIG could not find a single employee who was aware of any such policies or procedures. *Id.*

Defendants fair no better when they actually produced an applicable requirement as VA failed to enforce, or even monitor, its own policy for the management of the personnel suitability and security program. According to the OIG, VA Directive 0710, which "establishes policy" for "identification of a position's risk level," "requires background screenings commensurate with the risk involved for any positions that require access to VA information systems." VA OIG Rep't at 34.

> The Directive requires assessments for all positions that require access to VA information systems. The Directive requires assessments for all positions by the appropriate [VA official] for the <u>possible </u>risk or harm that <u>could</u> result from an incumbent's <u>loss</u>, misuse, or unauthorized access to, or modification of, VA information, including the potential for harm or embarrassment to an individual who is the subject of the records.

*Id.* at 34 (emphasis added). Whatever else may be true, it is utterly indisputable that Defendants <u>lost</u> 26 million Privacy Act records, whether it was for some weeks in May and June 2006 or a few years since John Doe started removing the records from the VA workspace. Thus, this Directive was intended to prevent precisely the situation presented by Mr. Doe by requiring a periodic review of an employee's suitability and need for access to Privacy Act records.

Yet, the VA employee who had walked out of his VA worksite with over 26 million Privacy Act records "had <u>never</u> been vetted through the background investigation

process for suitability." *Id.* (emphasis added).[8] Nor was his situation unique as "a number of other employees assigned to [same VA organization], some of whom have similar data access privileges, also had no suitability determinations." *Id.* at 35. Without suitability determinations, Defendants undermined essentially their only safeguard – the ensured reliability and trustworthiness of the employees granted access to the Privacy Act records.

Shockingly, although it was their only safeguard against the recognized risks of inadvertent disclosure, Defendants made no attempt to supervise or even account for their employees' suitability for access to Privacy Act records. In a statement curiously not cited in the VA OIG Report, the government official delegated the responsibility to determine position sensitivity levels stated unequivocally that VA does not maintain any list of the status of background checks conducted for employees in the office in which John Doe worked. Mem. of Interview, Management Analyst, VA Office of Policy, Planning, and Preparedness (June 20, 2006) (attached as Ex. B). In addition, that official has never re-evaluated the risk factors or the sensitivity level designation of any data analyst. *Id.* In other words, VA management made no attempt to safeguard the agency's Privacy Act records from unsuitable employees or to determine if employees were unsuitably using Privacy Act records. Defendants' failure to conduct required background checks, is a gross – and inexcusable – violation of the Privacy Act.

3.    *Defendants admit that they failed to protect against anticipated threats or hazards to the security or integrity of the records*

Defendants were fully aware of the threats posed by unauthorized removal of unencrypted Privacy Act records to personal storage devices without appropriate physical or password security. Defendants proudly point to three specific "lessons" in the annual

---

[8] Defendant Nicholson testified that the employee had not been vetted in over 32 years. Tr. of House Veterans' Affairs Committee Hearing on VA Data Security Breach (June 29, 2006) (attached as Ex. E) at 7.

"Cyber Security Training" as somehow absolving Defendants from liability in this matter. Defs.' Mem. at 10-11. Far to the contrary, however, the nature of this training – and the threats to Privacy Act records explicitly identified by VA therein – plainly and irrefutably establish that Defendants were well aware of the specific threat posed by removal of Privacy Act records from the VA worksite, the vulnerability of the VA's Privacy Act records to that threat, and potential safeguards to eliminate or mitigate the vulnerability (which they failed to implement). Such knowledge is dispositive of liability in the instant matter.

First, Defendants warned VA employees of the specific type of event that occurred on May 3, 2006. Defendants admit that a VA training lesson "states that 'the same <u>computers</u> that help us serve veterans' can be '<u>stolen</u> and vandalized' and thus can be used for '<u>theft and fraud</u>.'" Defs.' Mem. at 11 (emphasis added). The language of this admonition is not reasonably construed as other than a <u>specific</u> concern with the <u>specific</u> risk of an employee's laptop or desktop computer being taken and the Privacy Act records used to harm the individuals whose information was in the stolen records – exactly what happened to John Doe. Defendants, therefore, cannot legitimately assert that such a theft was "not reasonably foreseeable." To the contrary, the May 3, 2006, event was not only foreseen, it was the <u>anticipated</u> outcome of a failure to properly safeguard VA's Privacy Act records.

Next, Defendants were well aware that individual employees could place Privacy Act records at risk. While the training was specific to VA, "many of the principles which are discussed are also relevant to you, as an individual computer user." *Id.* at 10. Indeed, VA emphasized that it is an individual's "responsibility as a VA employee" to "[p]revent use by, or disclosure to, unauthorized persons" and noted the penalties for violating the applicable legal requirements. *Id.* at 9-10. There is, therefore, no reasonable doubt that

Defendants actually knew that individual employees could place Privacy Act records at unacceptable risk, but failed to act to reduce that risk.

Defendants were also fully aware of the risk from failing to implement technical safeguards (such as password protection) to secure Privacy Act records. "One of the lessons in the course deals with passwords." Defs.' Mem. at 10.

> Stating that '[u]sing the correct username and password combination is the <u>primary method</u> in the VA of identifying and managing access to systems and computer programs,' the lesson prescribes the content of passwords and states: 'Using these rules will provide you with a 'strong' password. VA requires strong passwords on all information systems.

Defs.' Mem. at 10 (emphasis added). Contrary to this training, Defendants did <u>not</u> require password protection for Privacy Act records removed from VA systems. *See, e.g.,* VA OIG Rep't at 29. Defendants were very well aware of the security provided by password protection and, conversely, the risks of not using that safeguard. It is ludicrous to assert that the risk to Privacy Act records without password protection was "not reasonably foreseeable" when, at the same time, that technology is touted by Defendants as the "primary method" to reduce the risk to Privacy Act records.

Finally, Defendants also plainly knew that the failure to implement any physical safeguard placed Privacy Act records at risk. In discussing data written "to a second storage medium such as a diskette, zip disk, CD, [or] tape," VA employees were told to "<u>be sure to lock away the information in a secure area if it contains sensitive data</u>." Defs.' Mem. at 10-11 (emphasis in original). To emphasize the potential risk from failure to comply with this safeguard, "the lesson further notes, [p]rivate and uncontrolled <u>media</u> . . . may present a security risk if left unprotected.'" *Id.* at 11 (emphasis added).

> Great care is taken to manage and protect data while it is on the VA network but <u>all this can be for nothing</u> if the [diskette, zip disk, CD, or tape] is unprotected.

*Id.* (emphasis added).  There can be little, if any, doubt that Defendants were well informed of the potential risks of failing to provide adequate physical safeguards, but failed to do so in violation of the Privacy Act.

4.      *Defendants admit that failure to adequately safeguard the stolen records could result in substantial harm, embarrassment, inconvenience, or unfairness to the individuals on whom information is maintained*

There is no reasonable argument that the May 3, 2006, theft of "identifying information, including names and dates of birth for up to 26.5 million veterans and some of their spouses" could have, did, and may continue to, have a substantial adverse impact on the individuals whose personal information was so cavalierly exposed.  In sworn testimony to the House Veterans' Affairs Committee on May 25, 2006, Secretary Nicholson characterized the theft as a "<u>devastating</u> occurrence" he estimated could cost the government "way north of $100 million" and "could be" about $500 million.  Tr. of Sworn Testimony of R. James Nicholson before the House Committee on Veterans' Affairs (May 25, 2006) (attached as Ex. F) at 7, 16-17 (emphasis added).  Further, VA received 105,753 phone calls on its data theft "hotline" in only the <u>first three days</u> after the delayed announcement of the occurrence.  *Id.* at 10.  This event, therefore, was significant to Defendants and the millions of veterans alike.  Thus, the Secretary himself eviscerated any argument that this event was not an occurrence that "could cause" substantial harm to the individuals whose personal information had been put in harm's way.

## II.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT

The Court should grant Plaintiffs summary judgment on the issue of Defendants' liability for violating the Privacy Act safeguards requirements at 5 U.S.C. § 552a(e)(10).  A court shall render judgment if the pleadings and admissions on file "show that 'there is no genuine issue as to any material fact and the moving party is entitled to a judgment as

a matter of law.'"  Fed. R. Civ. P. 56(c); *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir.

2006); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Although "all inferences must

be viewed in a light most favorable to the non-moving party," "a dispute over a material

fact is only 'genuine' if the evidence is 'such that a reasonable jury could return a verdict

for the nonmoving party.'"  *McCready*, 465 F.3d at 7 (quoting *George v. Leavitt*, 407

F.3d 405, 410 (D.C. Cir. 2005)).  Further, summary judgment "may be rendered on the

issue of liability alone although there is a genuine issue as to the amount of damages."

Fed. R. Civ. P. 56(c).

    Plaintiffs are properly before this Court and seek relief for Defendants' Privacy

Act violations described above.  The Complaint properly identifies Defendants and

plainly placed Defendants on notice of the nature of Plaintiffs' claims.  Plaintiffs alleged

the injury-in-fact and causation requirements of Article III, which are further bolstered by

the affidavits attached hereto.  Nothing more is required for this Court to grant summary

judgment regarding Defendants' Privacy Act safeguards violations.  Thus, this Court can

and should quickly dispose of this issue and move on to the issues of willfulness and

damages.

**A.    Jurisdiction and Venue Are Proper**

    Plaintiffs properly invoked this Court's jurisdiction pursuant to 28 U.S.C. § 1331

as this is a civil action arising under the laws of the United States and pursuant to 5

U.S.C. §§ 552a(g)(1), (5) because this is a civil action to enforce a Privacy Act liability

created under 5 U.S.C. § 552a after September 27, 1975.  Compl. ¶ 7.  As a substantial

part of the events or omissions giving rise to Plaintiffs' claims occurred in this district,

venue is appropriate in this Court.  *Id.* ¶ 8.

**B.    Plaintiffs Alleged Injury and Causation**

Plaintiffs fully complied with Federal Rule of Civil Procedure 8 ("Rule 8"), which requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002); *Sparrow v. United Air Lines*, 216 F.3d 1111, 1114 (D.C. Cir. 2000). Rule 8 is explicit that "[n]o technical forms of pleading or motions are required" and that "each averment of a pleading shall be simple, concise and direct." Fed. R. Civ. P. 8(e); *Sparrow*, 216 F.3d at 1114. The "statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz*, 534 U.S. at 512 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs fairly met this standard.

Rule 8's "simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz*, 534 U.S. at 513. This "is the 'accepted rule' in every type of case." *Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004) (citing *Conley*, 355 U.S. at 45-46). The only exceptions to this rule are averments of fraud or mistake pursuant to Federal Rule of Civil Procedure 9. *Swierkiewicz*, 534 U.S. at 513. A "requirement of greater specificity for particular claims is a result that 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" *Id.* at 515 (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993)). Plaintiffs' Complaint plainly satisfies Rule 8's liberal pleading requirements.

Plaintiffs also specifically complained of injury caused by Defendants' violation of Privacy Act safeguards requirements at 5 U.S.C. § 552a(e)(10). Immediately after the first announcement of the records theft, Defendants stated on the official federal government website that the "data loss"

> [P]otentially affects <u>all veterans</u> who have ever filed a claim for VA disability, or who have (or had) a VA insurance policy – no matter when the claim was filed or when they were discharged.  These veterans would be included even if their claim was denied or they are not currently receiving benefits.

http://www.firstgov.gov/veteransinfo.shmtl, "Latest Information on Veterans Affairs Data Security," (May 26, 2006) (attached as Ex. G) (emphasis added).  The named individual Plaintiffs each alleged that they are military veterans.  Compl. ¶¶ 14-17.  The named Plaintiffs affirm their veteran status, as well as their previous benefits application(s) to VA in their attached affidavits.  Aff. of Charles L. Clark (Dec. 27, 2006) (attached as Ex. H) ¶¶ 4, 6; Aff. of David Cline (Dec. 14, 2006) (attached as Ex. I) ¶¶ 4, 7; Aff. of James E. Malone (Dec. 14, 2006) (attached as Ex. J) ¶¶ 4, 6; Aff. of John Rowan (Dec. 13, 2006) (attached as Ex. K) ¶¶ 4, 6.  Further, each named Plaintiff also received a letter signed by Defendant Nicholson, "asking <u>all</u> veterans to be extra vigilant and to carefully monitor bank statements, credit card statements and any statements relating to recent financial transactions."  Letter from R. James Nicholson (May 2006) (attached as Ex. L) (emphasis added) at 2; *see* Aff. of Charles L. Clark ¶ 7; Aff. of David Cline ¶ 8; Aff. of James E. Malone 7; Aff. of John Rowan ¶ 7.  Thus, Defendants themselves placed the named Plaintiffs within the "zone of interest" of the Privacy Act created by the events described herein.  Plaintiff organizations alleged that they represented numerous other military veterans potentially adversely affected by Defendants' illegal actions and inactions.  *Id.* ¶¶ 9-13.  *See, e.g., Sierra Club v. Mainella*, 2006 U.S. Dist. LEXIS 77632 (D.D.C. 2006) ("associations such as plaintiffs have standing to sue if at least one of the members satisfies the 'irreducible constitutional minimum of standing'").  Thus, all Plaintiffs are properly parties seeking relief pursuant to the Privacy Act, Administrative Procedure Act ("APA"), or both.[9]

---

[9]  Although all Plaintiffs have standing, for the purposes of this motion, only a single Plaintiff need have standing for the Court to grant summary judgment.  *See, e.g.*, *Campbell v. U.S. Dep't of Agriculture*, 515 F.

The Complaint is also clear as to the claims made against Defendants, especially regarding Defendants' violation of Privacy Act safeguards requirements relevant to this motion.  Plaintiffs seek relief for "violations of the [APA] and the Privacy Act of 1974." Compl. ¶ 1.  More specifically, Plaintiffs alleged that "Defendant Nicholson failed to properly . . . ensure Plaintiffs' privacy rights were protected."  *Id.* ¶ 2.  Plaintiffs also alleged that Defendant VA disregarded "privacy rights by recklessly failing to make even the most rudimentary effort to <u>safeguard</u> [the stolen] personally identifiable information [which was] unencrypted, easily copied, and, apparently, available to anyone aware of its existence."  *Id.* ¶ 4 (emphasis added).  This allegation is fairly read to place Defendants on notice of the nature of Plaintiffs' claims.

Moreover, Plaintiffs also alleged additional violations of the substance of 5 U.S.C. § 552(e)(10).

> VA flagrantly disregarded Plaintiffs' privacy and caused Plaintiffs' adverse effects by failing to establish or implement appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against anticipated threats or hazards to the records security or integrity, which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information was maintained.  VA's security deficiencies allowed, and continue to allow, a single individual to compromise through disclosure the entire [VA] system of records.

Compl. ¶ 37; *see also id.* ¶ 39 (similar allegation against Defendant Nicholson).  In addition, Plaintiffs made even more explicit allegations.

> Despite the repeated identification of problems, VA has been unable or unwilling to properly secure the personal information under its control. These repeated failures to correct known vulnerabilities of VA's safeguards for Plaintiffs' private information demonstrated a reckless disregard for privacy rights and intentional or willful violations of the Privacy Act.

---

Supp. 1239, 1246 (D.C.D.C. 1981) (effect of decision would be the same "whether one or more than one plaintiff is found to have standing").

Compl. ¶ 26.[10]  Plaintiffs further alleged that

> The VA employee who reported the laptop computer stolen routinely took
> sensitive private information, including [Plaintiff's personal information],
> home since at least 2003.  The employee had not received a security
> background check for approximately 32 years.

*Id.* ¶ 27.

Plaintiffs also made it abundantly clear that Defendants' specified actions and

inactions were alleged to have caused Plaintiffs' damage.  "Each of Defendants' failures

complained of caused Plaintiffs adverse effects including, but not limited to,

embarrassment, inconvenience, unfairness, mental distress, emotional trauma, pecuniary

damages and the threat of current and future substantial harm from identity theft."

Compl. ¶ 40; *see also id.* ¶ 59 ("Plaintiffs suffer, and continue to suffer, harm as a result

of Defendants' actions and from actions improperly withheld or unreasonably delayed");

*id.* ¶ 64 ("each of Defendants' violations of the Privacy Act caused Plaintiffs adverse

effects").  Plaintiffs alleged both "tangible and intangible damages."  *Id.* ¶ 41.  These

allegations are clear on their face and require no "unwarranted inferences" or improper

reliance on "conclusory allegations."  *See Baur v. Veneman*, 352 F.3d 625, 637 (2d Cir.

2003).  The Complaint, therefore, satisfies Rule 8 and associated requirements.

**C.    There Are No Material Facts As To Which There Is Genuine Issue**

As described in detail above, Defendants have admitted the material facts

unequivocally establishing numerous violations of the Privacy Act safeguards

requirements at 5 U.S.C. § 552(e)(10) as documented in the July 2006 VA OIG Report.

Further, Defendant Secretary Nicholson "agreed with the findings and recommendations"

contained in the report.  VA OIG Rep't at vii; *see also Id.*, Att. A, Letter from R. J.

Nicholson to G. Opfer (July 6, 2006) at 1.  Significantly, Defendant Nicholson did not

---

[10]  Again, Plaintiffs are not seeking summary judgment on the issue of "willfulness" in this motion, only as
to an underlying Privacy Act violation.

challenge a single factual finding in the VA OIG Report and provided a "detailed response" to each recommendation therein.  *Id.*, Att. A at 1.  There is, therefore, no legitimate basis for now challenging the same facts in this litigation.  *See* Statement of Material Facts as to Which There is No Genuine Issue (attached hereto).

**D.    Plaintiffs Are Entitled to Judgment As a Matter of Law**

Defendants have admitted or conceded numerous violations of the Privacy Act and 5 U.S.C. § 552a(e)(10) and 5 U.S.C. § 552a(g)(1)(D) unequivocally requires judgment for Plaintiffs on the issue of liability for those violations.  As described in detail above, Defendants ignored or acted in direct contradiction of Privacy Act mandates to "establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats to their security or integrity which <u>could</u> result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained."  5 U.S.C. § 552a(e)(10) (emphasis added).  Thus, this Court can and should award Plaintiffs summary judgment on Defendants' Privacy Act violations as a matter of law.

## CONCLUSION

This Court should grant Plaintiffs summary judgment on the issue of Defendants violations of the Privacy Act safeguards requirements at 5 U.S.C. § 552a(e)(10) because (1) Plaintiffs are properly before the Court; (2) Defendants have admitted material facts establishing one or more Privacy Act violations and (3) Plaintiffs are entitled to judgment as a matter of law for the admitted violations.

Respectfully submitted,

_____/s/_____
L. Gray Geddie (D.C. Bar No. 421357)
Douglas J. Rosinski (D.C. Bar No. 461275)
Ogletree, Deakins, Nash,
  Smoak & Stewart, P.C.
1320 Main St.
Columbia, SC 29201-3266
Attorneys for Plaintiffs

Dated: January 9, 2007

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VIETNAM VETERANS OF AMERICA, | ) | |
| *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:06-CV-01038(JR) |
| | ) | |
| R. James NICHOLSON, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

[Proposed]
**ORDER**

THIS MATTER having come before the Court on Plaintiffs' Motion for Partial

Summary Judgment, and good cause having been shown, it is hereby

ORDERED that Plaintiffs' Motion is GRANTED.

Dated:_____.              _____
                                   JAMES ROBERTSON
                                   United States District Judge